Case number 18-1028 Valero Energy Corporation Petition v. Environment Protection Agency This is the line for the petitioner. Mr. Carlisle, for the respondent. Good afternoon. We're in the homestretch. May it please the Court. This case focuses on a particular provision of the Renewable Fuel Standard Program. Section 7545.011 imposes on EPA a duty to conduct periodic reviews of three particular issues and to use those reviews to inform adjustments to program requirements. In the underlying rule, EPA deprived regulated parties and the public of these statutory protections. The rule in question does two things. First, EPA reads out of the statute one-third of the mandated review and otherwise limits the nature and scope of the periodic review duty. Second, EPA purports to implement the statute by announcing for the first time that it has satisfied the periodic review duty. And to support this assertion, EPA points to actions taken years ago for different purposes but these actions plainly do not comply with the duty that Congress imposed in Section 011. I would like to address why the rule is final and reviewable, why it required notice and comment, and why it's contrary to law, arbitrary, and capricious. We ask the Court to enforce the statute by vacating EPA's determination that it has complied with Section 011 and remanding with instructions to complete a review in accordance with this statutory provision. So you're only asking for, let me be clear, Part 2 or Part 1 as well? Your Honor, 011 has three prongs. No, I'm talking about the program description that you're saying is a rule that has to be subjected to notice and comment. Yes. So there are two parts. One is EPA saying, here's our interpretation, and Part 2 says, here's our conclusion that we've complied. We believe that both of those are final and reviewable, and both of those require notice and comment. So you want the whole thing vacated? Yes. And I think that conclusion with respect to finality and the requirement of notice and comment is really dictated by two of this Court's opinions. The 2012 opinion in the Sierra Club case, 699 F3rd 530, and the 2011 decision in NRDC, 643 F3rd 311. Like the EPA actions in those cases, this one treads new ground. It's the first time that EPA has addressed the periodic review provision in any fashion. It marks the consummation of a process. EPA reached conclusions about what this provision requires and made a determination that its prior actions satisfied this section. So can we talk about the other prong of it? So let's not, just for purposes of asking the question, let's not talk about the prong that deals with consummation. Let's talk about the prong that deals with legal consequences. So what the agency says in the document itself in footnote 1, unlike our annual standards or certain other RFS regulatory actions that do establish legal requirements, neither our interpretation of the statute nor the description of our studies in this document require any party or the agency to do or not to do anything beyond what the statute requires. So you have to either think that that statement is wrong or that that statement is right and it doesn't matter. I think it's both wrong and irrelevant because what this provision does, unlike the provision in most of the cases on which EPA relies, this provision doesn't impose a duty on regulated parties. This provision imposes a duty on EPA. And what EPA has done in this underlying rule is say we have satisfied that provision, thus closing off claims that the duty has not been satisfied or claims for unreasonable delay.  Why do you say that it closes off claims that the duty hasn't been satisfied? Because this is our only opportunity today in this court, is our only opportunity to have judicial review of the determination that all these things that happened in the past satisfies this independent obligation in Section 011. But I thought you could, one could bring a challenge to those things that one now knows were periodic reviews. And then could bring, let's suppose you could. And there may be a reason why you can't. But let's suppose you could. If you could, then what you would say is now we know that those things that we didn't realize were periodic reviews are actually periodic reviews. And now we also know the agency's interpretation as to why it was satisfying the statute. We want to bring a claim within 60 days of coming to learn that those were periodic reviews. And we challenge the agency's interpretation. Let me tell you what's really going on, Your Honor. In those actions, the annual rulemakings, EPA defined the scope of those rulemakings very narrowly. In fact, in the last rulemaking that took place to set obligations for 2018, there was a list of a dozen things on which EPA received comments and which it took the position were beyond the scope of the rule. So what it's trying to do is unlawfully shoehorn, in the language of Sierra Club, a broad duty into the scope of rulemakings that took place years ago in which it treated all these things that would have been within the scope of a periodic review as beyond the scope of the annual rulemaking. But that sounds like a merits argument. That sounds like you're saying that they're now trying to treat themselves as if they satisfied a statute, and they didn't. And what we're really talking about now is whether you have the opportunity to make that argument somewhere. And why don't you have the opportunity to make that argument if you just challenge it on that ground and you say they're now saying those were periodic reviews. I now realize that, and I'm telling you that they're saying that, but they're wrong in the way they treated it. We disagree with their interpretation. For a couple of reasons. First, it doesn't make sense. And one thing they say they can do is change willy-nilly what satisfies the periodic review. So it's constantly a moving target, and it's constantly secret. We don't know when. Just respond as I understand.  Why can't we do that? The judge has, you know, EPA has said Rule 5 is our compliance with the periodic review. Right. So you come into court, if you're timely, and say that's wrong. A, if you have standing, and B, it's an arbitrary and capricious argument? I think that's really both impractical and nonsensical for us to have to go back and challenge 15 different things that happened in the past rather than challenging the consummation of the process which took place in this rule in which EPA for the first time said that those things are now satisfying the periodic review duty. It seems like it turns judicial efficiency and administrative efficiency on its head. Okay, but you're not ruling out, even though it would be costly, inefficient, the courts would hate it, that you could do it. I'm glad to know that the court views things that way. I would be curious if EPA would agree. All right. Now, I understand that one of your arguments, as I understand it, is your client has to comply with these volumes. And because Congress substantially raised the levels in 2007, your client would like to have EPA look at how this is affecting it and presumably have some adjustment made. Now, I don't see EPA pointing to a statutory provision that would entitle you to a waiver. I also understand that this may be beyond the case, that were EPA to try to issue a fine because your client has failed to meet certain levels, then you could defend. My question is, what's the upfront legal vehicle? And I thought that's where at least some of Judge Srinivasan's question was going. And is it a citizen suit? Is it an APA suit? So you know what EPA is going to say based on its brief in response to both of those arguments. So you have to persuade us that we shouldn't be persuaded by their arguments. So I'd like to take a step back and give you a little more background so that you understand the way the program works, the legal consequences, and what this precludes us from doing. It's on the face of the statute. The statute itself sets up an annual rulemaking in Section 03. Section 011 is a completely separate section, a completely separate duty. So every year EPA conducts an annual rulemaking, sets volumes for the next year. Those are snapshots in time, and they've been defined by EPA to be narrow in scope. And your client can challenge those? Yes, but what we are saying is that Section 011 is a different kind of review. It's not a snapshot in time. It is broader in scope, and it is aimed at looking at the feasibility of the requirements and the impacts on individual entities that are subject. Let me say one more thing just to contrast what's happening annually and what we say should happen periodically. In the annual rulemaking, and in this brief, EPA says, we don't have any obligation to do anything other than a class-wide impact review. We say that Section 011 entitles Bolero and others who are regulated parties to a review in conjunction with the statutory language. And when do you get to do that? We say that there is a mandatory duty, and that issue was before the district court and is on appeal in the Fifth Circuit. And that issue is not before this court. What I'm trying to narrow on is, are you barred from any remedy, which is basically what the agency is arguing, or do you have opportunities? And I have some other questions for EPA, but I just want to understand. So you can comment on the annual rulemaking, but of course EPA says we don't do individual reviews, that's a class issue. I understand they say other things. You can't do an APA challenge because this is not final, EPA says. It's not the consummation of our interpretation. What else do you have? A citizen suit? We brought a citizen suit, and EPA's response there was that there's not a specific deadline in the statute. And the district court agreed, and that issue is on appeal. The district court said no subject matter jurisdiction. The discretionary call is to time it. And two days later, EPA, for the first time in the history of the program, announced this underlying rule. Can I ask this question? So suppose that in the annual document, EPA submits the annual document and then adds a section to it that says, by the way, this annual document satisfies our obligation to do a periodic review. And annually, obviously, is periodic, so it at least is periodic. And it could say, this is one of our periodic reviews, and here's how we're satisfying the periodic review requirement by doing that. And it seems to me at that point, you could seek review and say, it's arbitrary and capricious as to the periodic review part, because the explanation they've given is nonsensical. And you could make all the arguments you're just now making, which is that what they're saying about dissatisfying the periodic review obligation just doesn't work. You look at these things, you can't satisfy the periodic review by doing the annual part. They're a mismatch. You have to do something different. You could make that argument, and that would be heard, and it would be determined whether it was arbitrary and capricious. And it seems like what EPA is saying is, that's what you should do. And it's true that they never said that in an annual document, but they've now said it, and that gave you a new chance to seek review of those documents on the basis that you now know they were periodic reviews. I think what they've done is different and more. What they've done in the underlying rule is say, we don't have to conduct any review in accordance with the third prong, O11C. For the first time, they have said, that provision is a nullity. And this is the opportunity for this court to correct that error, which is absolutely clear from this court's decision in U.S. versus Palmer last year, that EPA cannot treat that provision as a nullity. And this is the only opportunity we have to challenge that. There's absolutely no precedent for having a situation like this one, where there is clearly a scrivener's error. You have a cross-reference that cross-references to a provision that doesn't exist. But let me be clear. I thought Judge Sreenivasan's question was a friendly question, and maybe I misunderstood it. But if this court were to say that EPA has now announced its position, and its position is exactly as you describe it, why can't you challenge it during this annual rulemaking? Because it is totally disconnected from the annual rulemaking. I understand your argument. There is not a vehicle, I can imagine, where we can... For example, next year, they're not going to say that. Next year, they put out a proposed rule, and they say, here are the levels. And your client comes in and says, well, the D.C. Court of Appeals has held that EPA's statement is its position. And your only remedy is either in this annual review, or EPA has to be told that its interpretation of the third prong, and its interpretation of who is an individual and each entity, as barring your client's individualized review, is incorrect. I don't think it's as friendly as you think it is. Well, tell me why, I just want to be clear. Because in the annual rulemaking, the statute does not bind EPA to treat the annual rulemaking as a periodic review. In fact, in the past, it has clearly treated the annual review as something quite different. And so, there's nothing... Certainly, EPA would argue that. And the reason I know that is because when we have tried to comment on issues, and I can give you a very specific example, we made comments in the last rulemaking about the effect of the treatment of renewable fuel that is ultimately exported. And we said, this affects the feasibility of these requirements. And EPA filed a brief last week in this court, in case number 17-1258, defending its position that that issue was beyond the scope of the annual rulemaking. We cannot raise in that case the idea that they should have conducted a periodic review, because there's nothing that requires the annual review and the periodic review to happen at the same time. So, I'd like to... I would like to move on to the legal issues that are before the court with respect to the substance of the decision. And that is that the substance of the rule is contrary to law in several ways. First is the scrivener's error. Everybody agrees that there is no plausible reading of the text absent correcting this erroneous cross-reference. What's unusual about the case is that both sides agree, as EPA says, it is obviously reasonable to read O11C as cross-referencing the volume requirements in O2B. EPA agrees that this is consistent with the text, the structure, the purposes of the statute, and the legislative history. That's at Joint Appendix 8. What they try to rely on are cases where the court had to choose between the literal meaning and something else, where the court could give effect to the literal meaning. Even then, as in the Appalachian Power case, where the scrivener's error distorts the true meaning, the court corrected it. Here, the drafting history and the structure show without a doubt that Congress intended to cross-reference the volume requirements. They did so in all of the versions of the law bills in both the House and the Senate prior to recodification. They all cross-referenced back to the volume requirements, which were then in a provision numbered A2. In the recodification process, A2 became 2B. They changed one reference in the introductory text, but neglected to change the other in paragraph O11C. The second way that EPA's underlying rule is contrary to law is this idea that we've talked about, that the review was met by repurposing these earlier actions. I'm not going to go back into that because I think we've covered it, but I do think it's important to emphasize the language of the statute in the part of the provision that EPA treated as a nullity requires EPA to review the impacts on each entity described. That is not satisfied by this class-wide review that they purport to have done in the past. The reason that they're so insistent on nullifying the third prong of the periodic review provision is that they concede that they have never conducted this kind of individualized review, even though they are well suited to do so because all of the entities that are described are regulated parties. They are subject to reporting requirements. They are participating in an electronic reporting system. EPA is uniquely suited to collect data from those entities by which it can study what has been documented as disparate impacts on various entities that are differently situated. I am out of time. I will answer any further questions or come back with a brief rebuttal. Mr. Carlisle. I may have pleased the Court. My name is Ben Carlisle from the Department of Justice on behalf of EPA. At counsel's table is Ryland Lee from EPA's Office of General Counsel. The periodic review document is not subject to judicial review because it is not final agency action. However, even if the Court finds that it has jurisdiction to review the periodic review document, it should deny the petitions because the periodic review document is an interpretive rule, correctly construes the statute, and EPA's view of its compliance is not arbitrary and capricious. First, the periodic review document is not final agency action because it has no legal consequences. Rather, the periodic review document is simply a commentary explaining EPA's view of the law under Section 011 and why EPA believes it has fulfilled its obligations. So if I'm representing Valero, what do I do? Your Honor, Valero has, I assume you mean in order to secure judicial review? I would make two points to that. What do I do? The volumes have been raised. I want to get them lowered. If the volumes have been raised and Valero wants to get them lowered, it can challenge EPA's annual rule and argue that the rule is arbitrary and capricious. No, but EPA is going to respond. We've looked at the class of which Valero is a part. It loses. Valero has the opportunity to comment on for the annual rulemakings, adjusting the volumes. I think it's worth clarifying something here that I don't think it is EPA's position. In fact, I'm fairly confident that it is EPA's position that those annual rules would not be the appropriate vehicle to review whether or not it has engaged in its periodic reviews. Even after your statement? That's right, Your Honor. EPA has taken the position there is no right to an individual review. That's EPA's position on the law, and I think the important thing to realize about the periodic review document is that whatever claims Valero had for review before EPA issued this document, it still has. Whether Valero can in the abstract secure judicial review of EPA's interpretation is not a relevant question here. Going back to our Appalachian Power case where we talked about agencies' efforts to avoid judicial review by putting in language like footnote one, a sort of boilerplate. But the agency has taken a position. This particular regulated party claims that EPA's interpretation is incorrect and that it's causing prejudice to Valero. And it can either do what counsel described as trying to bring a very expensive lawsuit challenging 15 interpretations of rulemaking, or it can come into court and say, we are entitled under the plain text of the statute according to its interpretation to these individual assessments because the waiver provisions don't give us any relief under the plain text of the waiver provisions. And the annual review, given EPA's position that this is going to be done on a class-wide basis, doesn't give us any individualized review either. So why isn't the document sufficiently final for that purpose? Because, Your Honor, the document did not change any of Valero's existing claims. No, but it claimed, it said there are no individualized reviews. But EPA could have taken that position internally. EPA was not required to issue this document at all. Definitely not. And so what it did, the way I'm reading it, it looked at all of our cases, and it purposely put that footnote in there. It purposely didn't publish it in the Federal Register. It purposely didn't say that this is binding on the field. So it checked off all the boxes. And so this is just something floating in the air. And the question is, well, what is a regulated party supposed to do where there's not an implausible argument that Congress used some language that talks about each entity, suggesting that Congress anticipated that while EPA could very well reasonably determine that it's going to do the annual reviews on a class-wide basis, there might be individual situations where it was an undue impact. And EPA, if it looked at it on an entity that comes to it, might agree. Your Honor, I think your question actually illustrates EPA's point in some way, which is that Valero is in no worse boat than it was before EPA issued this document. Now, in terms of what Valero could do, it has brought a mandatory duty claim, which is currently on appeal and has not been disposed of. Some party may have an unreasonable delay claim, possibly including Valero, claiming that EPA hasn't complied with this duty. EPA doesn't believe that reviewing either this document itself or the annual rules, because those are not themselves. Those are unitary decisions that are not themselves purporting to be the entirety of EPA's periodic reviews. EPA cited several of those and a number of different documents. We don't think that either of those would be an appropriate vehicle, but Valero is in exactly the same boat that it was before EPA issued this document, by virtue of EPA being very careful to issue a document that is purely explanatory. So if I thought that it were important that somebody have an opportunity to get review of EPA's logic in saying that it's satisfying 011, yeah, 211.011, the periodic review requirement, what vehicle would somebody use? Your Honor, I think it is conceivable that there may not be a vehicle for that. We would take a look at any unreasonable delay claim that was litigated, or excuse me, that was presented to us. I don't know that we would concede jurisdiction on that. That is the claim that strikes me as most plausible out of the claims that I can think of that Valero or some other party that has a section that says fulfillment of the obligation to conduct periodic review. And then it documents how it's fulfilled that requirement. And if somebody wanted to say, no, you haven't, you haven't fulfilled that requirement. And we're talking about stuff that you've already done, not about what you might do in a future annual review, but stuff that you've already done. Someone says, no, I looked at those things. I don't think you fulfilled your requirement at all, because now that I understand your interpretation, it's nonsensical. Your position is there's no way to get review of that? Your Honor, I think there may be some way to do so. I think, as I said, the unreasonable delay claim is the vehicle that I can think of at this moment. But I can't say the reason why that might fail. What else is there? I think that would be the avenue to attempt to do so. You can't go with the documents that you say now satisfy the periodic review requirement, and your argument for that is that it's spread out over multiple ones of them, so how do you know which one to challenge? That's a component of the argument, Your Honor. But the purpose, those documents are annual rules, for example, setting the volume requirements issued for that specific purpose. And as a component of that, EPA has been conducting some of these reviews. But EPA didn't have to do it that way. It could have conducted the reviews otherwise. And so it's not necessarily the case that all of the documents that EPA would cite as part of its reviews are themselves final agency action. The core that I keep coming back to here, though, is that the narrow issue before the Court in terms of finality is, did this document change Valero's ability to secure review? And it may be the case that it did. And I know the one answer to the proposition that did it change its ability to get review is, no, it didn't because it never had any ability to get review, and this doesn't create any ability that didn't otherwise exist. I get that, which is just to say it's always been zero, and this document is also a zero, and therefore we say it's zero, which that makes sense to me. But what this document did is something else. It also said we've already satisfied the periodic review requirement. Respectfully, Your Honor, it said so in the context of expressly disclaiming any intended legal effect. EPA articulated an interpretation of the statute and then set forth its view of why it has complied with that statute. But we rejected that in Appalachian Power. That's the boilerplate where the agency says we're not bound by this. Respectfully, Your Honor, I believe the law is that the court is not necessarily bound by EPA's statements to that effect, but that is a factor that the court will consider. But what I'm saying in Appalachian Power, we characterized the statement as boilerplate, so it was not of any legal significance as far as this court was concerned. Yes, Your Honor, but in this case, we are, in fact, here arguing that this document does not cut off any legal claims that Valero may have. Well, what you just acknowledged is maybe Valero has no remedy. It can go to Congress and get the statute changed. Presumably you would say that's available to them. But it's saying we have a piece of, not a piece of paper, but we have a document here that says what EPA's position is in interpreting a section of a law that Congress has passed where Congress used terms that Valero says entitled it to something. Now, EPA may have discretion as to timing, but Valero's argument is it can't just forever bar this, and in its statement, it's saying it is forever barred. Respectfully, no, Your Honor. Well, unless we change our minds. No, Your Honor, because the whole, I think the key piece of EPA's position is that it never had to issue this document in the first place. This is Valero attempting to create a right of judicial review out of this document In all due respect, EPA of its own volition decided to issue this document. That's correct, because EPA, I think as a matter of So Valero can use it for what it's worth. And I think our position is that the document Nothing. Does not create a new right of judicial review. Did EPA have to issue the document that was at issue in Sierra Club? I don't believe it did, but in that case Well. It affirmatively chose to say that is the document in which the challenge is available to, and it successfully dismissed a district court claim. Correct, but you could have made the same argument. It never had to issue the document, and therefore, because it never had to issue the document, there's nothing to review. Yes, Your Honor, but in that case, again, EPA relied on that document as if it cut off claims, whereas in this case, EPA has taken the position that it has no legal effect. No, but the point is, when are we going to learn EPA's position? It's given us an interpretation, so Valero wants to challenge it. Your Honor, again, Valero may have an unreasonable delay claim, but I think we would say that this It's just that it's odd to define it in terms of unreasonable delay, if I'm understanding correctly, for the following reason. Unreasonable delay means you've never issued the periodic review that you needed to issue. Yes, Your Honor, and that's Valero's position. And then in your document, it says, notwithstanding that we have not until today explicitly labeled these as periodic reviews, they nevertheless satisfy the requirements of Section 211.011. Right. And then it seems weird to say, all right, I've got a document that says we've satisfied the requirements of 211.011, and your answer is the way you get review of that is to say you never issued a periodic review. Because it's flying in the face of a statement that says that we did. Right, but, Your Honor, EPA could say the same thing, and it's, for example, it's briefs in this case or it's briefs in an unreasonable delay case, and that would not have legal effect. The, you know, we would certainly, I expect, I can't speak for certain for future counsel, but I expect we would contest any unreasonable delay claim, at least in part, on the theory that EPA has fulfilled its duty. And I think we would likely point to the same actions that are at issue in this document. And if that's true, so on one hand, you're saying bring it as an unreasonable delay, and then on the other hand, you're saying when you're bringing it as an unreasonable delay, we're saying it's not an unreasonable delay because we already did it. And then if somebody says, okay, I just, my head's snapping, all I want to do is I want to figure out how can I challenge the thing that you said you already did. Because I see a statute that says when you do a periodic review, you've got to look at a handful of things. I look at the things that you're looking at, those are the wrong things. I think you're supposed to be looking at different things. And then how do I get that claim aired? How do I get judicial review of that claim? It is, Your Honor, it is, I think, conceivable as you acknowledge that their right to review may not have existed in the first place. And the question, you know, the question for the Court here isn't in the abstract does Valero have a right to judicial review. There's no exception to the finality requirement based on the unavailability of review. The question is what did this document do? Suppose the agency tonight issues a document that says we've decided that all of Title IV will not be enforced anymore. Does anybody who claims that they are harmed by that have any opportunity to challenge that statement? Your Honor, I think that's a complicated question because it gets to EPA's enforcement discretion. And my understanding of the law is that broad proclamations of a decision not to enforce that abdicates EPA's duty are themselves potentially reviewable. Well, I think, you know, the document was written, if I could speculate here, in light of our Court's precedent. So it didn't do certain things like check off these boxes. And yet in Appalachian Power we said, you know, we can look at this in some instances and say the agency is simply trying to avoid judicial review. And the question in my mind is is this one of those circumstances? So you would agree with me, wouldn't you, that were EPA to propose fines on Valero from failing to meet the volumes, Valero could defend, could it not, on this statutory argument, whether it would win or not is a different question. But I mean, it could make these arbitrary and capricious arguments, could it? I'm not sure about that exact hypothetical. I know. Well, but I think. Because EPA might say, look, you say the fine of a million dollars is too high. We think, you know, it's appropriate and give ten reasons why it's appropriate. Right. I think, you know, Valero could advance whatever arguments it wanted, if you know, or that were properly before a court to contest that fine. I do want to return to, I think, the premise of your question about EPA ticking the boxes. I think that the key, again, is that if EPA ticks those boxes in a way that there are no legal consequences because its intention is just to explain its position, then the document is non-final. Maybe I know I'm missing something very basic here. So let me ask the question this way. Suppose EPA issues a document that has the following. It says, we are now conducting a periodic review consistent with 211.011. Here's the factors we're considering. It looks at the statute and it says, here's how we read the statute. Here's the factors we're considering. This is supposed to be a review that's conducted in conjunction with the appropriate adjustment of the requirements described in subparagraph B. And it does whatever it needs to with respect to actually adjusting those requirements. And then it says, there, now you've seen this is our periodic review. And then somebody brings an action to get review of that and says, wait a minute. I see that you've done your periodic review. It's connected to the appropriate adjustment of the requirements. I don't understand what you're doing with the periodic review because your analysis of the statute just doesn't comply with my understanding of the statute. If they did that, would that be something that could be reviewed? Your Honor, I think if EPA did that and said, this document is our periodic review. And as in Sierra Club, the legal consequences of this is, we say, definitively, we have fulfilled our duty. And now is your opportunity in this document to challenge it. And we're cutting off all of your other claims. Then I think that would be. I don't understand the cutting off all of your other claims. Why do you have to say that? Because that is the legal consequence that Valero is essentially alleging here. What they're saying is different in the world is that. There's never been a prerequisite to judicial review that there's no other form of judicial review. It's just that if it's a final agency action, you get judicial review. That's right, Your Honor. But the argument that they are making, that the legal regime has changed, is in part, and I think in primary, that EPA has changed where they can get judicial review. That that's the change in the legal regime that they are identifying. And that's what EPA disputes. I'm not 100 percent sure I understand that, but let me ask this follow-up question. It's my mistake, not yours. Let's posit that. So if that's true, that in that situation, there would be judicial review, then what's the difference between that and the current situation? Because in the current situation, what's happened is EPA has said, not that this document is the periodic review, but it said, I've done some stuff before, and now I'm telling you that's the periodic review. Your Honor, I think that's the difference between this case and Sierra Club, is in Sierra Club, EPA affirmatively took the position that the document had the legal consequence of cutting off claims and used that as the opportunity to dismiss claims in district court. So the difference here is essentially in the purpose for which EPA explained the document, or issued the document, here explanatory, in Sierra Club, with the idea of actually establishing and saying, this is the place to go and challenge whether we have fulfilled these duties. In Sierra Club, EPA could have done something more analogous to what it did here and said, whatever avenues you have to challenge whether we have fulfilled this 90% standard that was at issue in that case, take those opportunities, but it took a different course than it did here. Let me ask one other question in terms of your understanding of the statutory scheme. Is your EPA's position that Valero should come to EPA and file some type of document that says, we want periodic review as an individual entity, and then EPA says, nope, there is no such remedy, and at that point, Valero gets judicial review? Is there any procedure that you're aware of? Your Honor, I suppose, and I hadn't given this a great deal of thought, EPA could potentially file a petition for rulemaking requesting that EPA adopt some specific regulation or procedure to do this. I haven't, and I assume that if EPA Well, what I was thinking of is that in other contexts, a regulated party is able to come to the agency and ask for a waiver, and that's an individual party, individual facts, et cetera. An EPA makes an individual decision to grant or deny the waiver, and then, presumably, the regulated party, if it was denied the waiver, could seek review to the administrator, and if the administrator affirmed, then could come to court. I'm just trying to think of, is this sort of an administrative exhaustion issue in terms of getting into court? That's not the way this has been argued. I realize that. But I'm just trying to understand when you say there's no remedy, notwithstanding an interpretation of the statute. Your Honor, I'm not aware of a procedure. I don't think of this as an administrative exhaustion issue in that respect. I'm well over my time, but I would be happy to address any questions that the Court has on any other aspect of our briefing. All right. Thank you. Okay. Ms. Klein, do you want to take two minutes? Yes, please. Judge Trinivasan, the process you described is exactly what EPA should have done. It should have issued a notice and given an opportunity to comment, both on the interpretation of the statute and the implementation of the statute, and by taking the action that it did, it deprived us of any opportunity for notice and comment on those issues. In the Sierra Club case, that determination alone, the repurposing, the unlawful shoehorning, that alone was sufficient to establish finality and the need for notice and comment. The same is true here. Judge Rogers, with respect to your question about, I think you were referring to the provision in the statute that allows small refiners to petition for an exemption. And the statutory language there is very different. It puts the onus on the small refiner to petition, and the relief to be granted is very narrow. This statute says EPA, the administrator, shall conduct the periodic review. I wasn't clear if your client was a small refiner, but in any event, that aside. It's a different provision, different procedure, different remedy. And you know of no procedures such as I was discussing with counsel for EPA. Not that would allow us to compel EPA to follow the statutory command to conduct a periodic review. This is the only opportunity that we have to enforce the statute. And as your questions to my colleague revealed, this really is an attempt to avoid both notice and comment and any form of judicial review. Thank you. Thank you. Stan, please.
judges: Henderson, Rogers, Srinivasan